IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| James Gordon Gibson, ) | |
| ) | Civil Action No. 2:10-2132-RBH-BHH |
| Plaintiff, ) | |
| ) | |
| v. ) | **AMENDED** |
| ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| ) | |
| Laurens County Detention ) | |
| Center, Sheriff Ricky Chastain, ) | |
| Major Christopher Hudson, ) | |
| Lt Sullivan, Lt Champagne, ) | |
| Lt Vera Nedahausen, Lt. ) | |
| Westbury, Sgt. Lowry, and ) | |
| Six John Doe Assailants ) | |
| ) | |
| Defendants. ) | |
| ) | |

The Plaintiff, proceeding *pro se*, seeks relief pursuant to 42 U.S.C. § 1983. Before the court is the Defendants' Motion for Summary Judgment. (Dkt. # 39.)

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983, and submit findings and recommendations to the District Court.

The Plaintiff brought this action seeking damages for alleged civil rights violations. (Dkt. # 1.) On January 18, 2011, the Defendants filed a Motion for Summary Judgment. (Dkt. # 39.) On January 20, 2011, pursuant to *Roseboro v. Garrison,* 528 F.2d 309 (4th

Cir. 1975), the Plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. # 41.) On February 23, 2011, the Plaintiff filed a response opposing the motion. (Dkt. # 50.)

## **FACTS PRESENTED**

The Plaintiff is civilly committed as a sexually violent predator ("SVP") and currently housed at the Broad River Correctional Institution. The incidents alleged in the Complaint occurred while the Plaintiff was incarcerated at the Laurens County Detention Center ("LCDC"). On November 30, 2006, the Plaintiff was taken into custody pursuant to a civil commitment order and placed into the LCDC. (Compl. ¶ 4.)

The Plaintiff alleges that on August 12, 2008, he informed Lt. Sullivan that he had been threatened by other inmates because he was deemed a sexually violent predator and he requested protection. (Compl. ¶ 5.) He also alleges at some point the Defendants Sheriff Ricky Chastain, Major Christopher Hudson, Lt. Vera Nedahausen, Lt. Champagne, Lt. Westbury, and Sgt. Lowry were all informed of the situation, but none of the Defendants took any action to protect the Plaintiff. *Id.*

On August 15, 2008, at approximately 9:00 p.m., six inmates entered his cell and beat him until he was unconscious. (Compl. ¶ 6.) The Plaintiff alleges he reported the incident to Officer Bible and he was placed in a holding cell with no bedding where he alleges he remained for days and was forced to sleep on the floor. (Compl. ¶ 7.) He alleges the Defendants refused to transport him to the hospital for five days. *(Id.* at ¶ 8.)

The Plaintiff alleges that he was finally transported to Laurens County Health Care System on August 20, 2008, where an x-ray revealed that the Plaintiff suffered from multiple facial fractures and a concussion. (Compl. ¶ 9.) He also alleges he suffered from massive bruising, cuts, black eyes, and broken teeth. (Compl. ¶ 10.) He alleges when he returned to the LCDC from the hospital, he was placed in a holding cell and denied further medical attention, except for being provided with Naproxen. (Compl. ¶ 11.)

The Plaintiff alleges he was kept in the holding cell for another eight days before he was sent to Piedmont E.N.T. He states that reconstructive surgery was recommended and the surgery was scheduled for September 26, 2008, with a pre-operative appointment scheduled for September 24, 2008. (Compl. ¶ 12.)

The Plaintiff states he was again placed in a holding cell for two or three days and then in another room with two cellmates where he was forced to sleep on the floor on a single mattress next to the toilet. (Compl. ¶ 13.) He alleges his attackers began to intimidate and harass him and threw urine and bleach at him at least twice. *Id.*

The Plaintiff alleges that on September 25, 2008, he was denied his surgery and was instead transferred to the SVP Treatment Program at the Broad River Correctional Institution. (Compl. ¶ 14.) He alleges that as of the date he filed his complaint, August 2, 2010, he has been denied medical care, including the reconstructive surgery. (Compl. ¶ 15.)

## APPLICABLE LAW

### SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at

324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## DISCUSSION

Initially, the undersigned notes, as the Defendants contend, that the LCDC is not a proper defendant in this action. The LCDC is a building and is not a legal entity, political subdivision, and/or agency which is subject to suit. *Preval v. Reno*, 57 F.Supp.2d 307, 310 (E.D.Va.1999) (holding "[t]he Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. § 1983."); *Brooks v. Pembroke City Jail*, 722 F.Supp. 1294, 1301 (E.D.N.C. 1989) (holding "[c]laims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit.") Accordingly, the LCDC should be dismissed a Defendant.

**Failure to Protect**

The Plaintiff alleges that the Defendants failed to protect from the August 15, 2008 attack by other inmates. The Defendants contends the Plaintiff has failed to state such a claim. The undersigned agrees.

Deliberate or callous indifference on the part of prison officials to a specific known risk of harm states an Eighth Amendment claim. *Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). Not every injury suffered by one inmate at the hands of other inmates, however, translates into constitutional liability for the prison officials responsible for the

victim's safety. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). In *Farmer*, the Supreme Court defined deliberate indifference, holding that "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. The test is not whether an official knew or should have known of the possibility of harm, but whether he did, in fact, know of it and consciously disregard that risk. "[T]he official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. While the objective information known to the official may be used to infer the knowledge he actually had, and to draw inferences about his actual state of mind, those inferences are not conclusive. Further, the Eighth Amendment is not violated by the negligent failure to protect inmates from violence. *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Moore v. Winebrenner*, 927 F.2d 1312 (4th Cir. 1991).

A failure to provide adequate security in general, however, is insufficient to establish a constitutional claim of deliberate indifference to protect. *See Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008) (holding that negligence with regard to providing security in general is insufficient to prove a constitutional violation); *see also Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008) (stating that prisons are inherently dangerous places, and officers cannot be held liable for every injury an inmate receives at the hands of another inmate).

Here, the Plaintiff fails to establish an Eighth Amendment claim because he has not shown that the Defendants knew of a specific risk of harm to him and consciously disregarded that risk.

Included within the incident report regarding the assault is the Plaintiff's handwritten and signed voluntary statement which the Plaintiff has not disputed in any way. (Defs.' Mem. Supp. Summ. J. Mot. Attach. # 2 - Incident Report.)  In the statement, the Plaintiff stated that after canteen was passed out, at approximately 9:00 p.m., an inmate entered his room and asked the Plaintiff to trade a couple of cans of soup for some beef sticks. (*Id.* at 4.)  The Plaintiff stated that he started to tell the inmate that he did not have anything to trade, when three other inmates came into his room "demanding the canteen."  *Id.* The Plaintiff stated he told them they were not getting anything from him. *Id.*  He stated that one of the inmates told him to "give it up" and then started punching the Plaintiff in the face. *Id.* He stated that when he started fighting back another inmate began kicking him in the face and head.  *Id.* He stated that someone else kicked him in his stomach several times. *Id.*  After the attack, the plaintiff attempted to identify which inmates were involved. Those inmates where immediately transferred to C-Max, pending an investigation.

While the record shows that the Plaintiff filed numerous requests to staff forms regarding his medical care, there is no evidence that the Plaintiff ever filed anything requesting protective custody or  indicating that he was under fear or threat of harm from any other inmates.  The only inmate request to staff form filed by the Plaintiff relating to any security issue was dated January 9, 2007, when the Plaintiff requested that a

particular inmate be assigned as his cellmate. In that request to staff form, the Plaintiff stated "I do not want a piece of s--t put in this room or there will be problems. Also, I am not prejudiced against anyone but I do not want a black put in here unless he is older and not prone to the gang mentality." (Defs.' Mem. Supp. SUmm. J. Mot. Attach. # 4 - Aff. at 5.)

In his Complaint, the Plaintiff alleges that at 12:30 p.m. on August 12, 2008, he told the Defendant Lt. Sullivan inmates were threatening him because of his SVP status and he alleges he requested protection. (Comp. at 2.)  He alleges he informed each of the Defendants "at one point or another" of the "extreme matters and racial tensions, as well as, un-controlled violence and threats against him by these gang members running full force without impunity on A-Pod . . ." *Id.*

First, the only evidence that Plaintiff has presented to support his claim that the Defendants failed to protect him are his own allegations. *White v. Boyle*, 538 F.2d 1077, 1079 (4th Cir.1976) (conclusory allegations are insufficient to withstand a properly supported motion for summary judgment). However, even accepting these allegations as true, the Plaintiff does not allege that any defendant was aware of a *specific* threat of harm to him. There is no evidence that the Plaintiff informed any of the Defendants that he had been threatened or that he feared an attack from another specific inmate or group of inmates.

Moreover, it is apparent from the Plaintiff's description of the incident that the violence he encountered on August 15, 2007, was a random occurrence. (Defs.' Mem.

Supp. Summ. J. Mot. Attach. # 2 - Incident Report at 4.)[1]   Another inmate in his statement, also stated that the assault occurred after the Plaintiff refused to give the other inmates tobacco.  (Defs.' Mem. Supp. Summ. J. Mot. Attach. # 2 - Incident Report at. 7.)  Further, Pvt. Bible in his statement in the incident report stated that the Plaintiff had told him that the assault occurred over canteen items.   (Defs.' Mem. Supp. Summ. J. Mot. Attach. # 4 - Lt. Champagne Aff. Attach. at 4.)  Finally, there is a notation in the Plaintiff's medical records which also refers to the fight having been over canteen items.  (Defs.' Mem. Supp. Summ. J. Mot. Attach. # 4 - Lt. Champagne Aff. at 6.)

The Plaintiff fails to establish that the Defendants knew of a specific risk of harm to him and consciously disregarded that risk.  Accordingly, the Plaintiff's failure to protect claim should be dismissed.

**Denial of Medical Treatment**

The Plaintiff alleges the Defendants were deliberately indifferent to his medical needs following the assault at the LCDC on August 15, 2008.  The Defendants contend the Plaintiff has failed to state a claim of medical indifference.  The undersigned finds that .

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). This obligation

---

[1] Finally, to the extent the Plaintiff is complaining that any of the Defendants failed to comply with the SCDC policy regarding the housing of SVP detainee (Dkt. # - 50- Pl.'s Mot. to Deny Defs. Summ. J. Mot. at 6.), such a claim fails, as the failure of prison officials to follow their own policies or procedures, standing alone, does not amount to a constitutional violation. *Keeler v. Pea*, 782 F.Supp. 42, 44 (D.S.C.1992) (holding violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983). *See also Riccio v. County of Fairfax*, 907 F.2d 1459, 1469 (4th Cir.1990) (holding if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue).

arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105.[2] Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104. To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Deliberate indifference is a very high standard. In *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir.1990), the Fourth Circuit Court of Appeals noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Estelle,* 429 U.S. 104; *Farmer*, 511 U.S. 825; *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir.1986). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as

---

[2]At the time of the incidents alleges in the Complaint, the Plaintiff was being held at the LCDC pursuant to a civil detainment under the Sexually Violent Predators Act ("SVPA"). A civilly committed individual under the SVPA most closely resembles the custody status of a pre-trial detainee. *See LaSure v. Doby*, 2007 WL 1377694, *5 (D.S.C. May 8, 2007) (citations omitted). Confinement conditions of pretrial detainees are to be evaluated under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). However, the standard for reviewing medical claims of pretrial detainees under the Fourteenth Amendment is essentially the same as that for a convicted prisoner under the Eighth Amendment. *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir.1992).

mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.' " *Coppage v. Mann,* 906 F.Supp. 1025, 1037 (E.D.Va.1995) (*quoting Monmouth Co. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987)).  To establish a claim of deliberate indifference against non-medical prison personnel, a plaintiff must demonstrate that the official was personally involved in the treatment or denial of treatment, or that they deliberately interfered with the treatment, or that they tacitly authorized or were indifferent to the medical provider's misconduct.  *Miltier*, 896 F.2d at 853.

Further, claims of mere negligence, malpractice, or incorrect diagnosis are not actionable under § 1983. *Estelle,* 429 U.S. at 106.  While the Constitution requires a prison to provide inmates with medical care, it does not demand that a prisoner receive the treatment of his choice.  *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir.1988). "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citation omitted); *see also Wright v. Collins,* 766 F.2d 841, 849 (4th Cir. 1985).

The evidence shows that on the night of the assault, according to the incident report, a nurse directed that the Plaintiff be placed on "medical observation" and was to be awakened every 45 minutes to an hour to make sure his pupils were dilating and the same size. (Defs.' Mem. Supp. Summ. J. Mot. Attach. # 3 - Sgt. Westbury Aff. Attach. at 5.)   Then, on August 19, 2008, it was noted that the Plaintiff, who was complaining of

11

ringing in both ears and had a large black eye, had not been evaluated in the E.R. and would be sent to the E.R. for evaluation. (Defs. Mem. Supp. Summ. J. Mot. Attach. # 4- Lt. Champagne Aff. Attach. at 6.)

On August 20, 2008, it was noted the Plaintiff had been sent to the E.R. and because the CT scan showed multiple facial fractures, a referral to an ENT was needed. *Id.* An appointment with Dr. Eisenhower was scheduled for August 28, 2008. *Id.* Surgery was scheduled for September 26, 2008, and cancelled the day before because the Plaintiff was sent to SCDC. (Defs. Mem. Supp. Summ. J. Mot. Attach. # 4- Lt. Champagne Aff. Attach. at 7.)

It is undisputed that the Plaintiff was not transported to the hospital until August 20, 2008, five days after the assault and that during the assault he suffered bruising, a large black eye, a concussion, and numerous facial fractures. Further, it is undisputed that he was sent to an ENT and reconstructive surgery was scheduled for September 26, 2008. It is also undisputed that the day before the scheduled surgery, the Plaintiff was transferred from the LCDC to the custody of the SCDC on September 25, 2008, and the surgery was cancelled.

The Defendants contend that "the Plaintiff seems to suggest that there was a delay in him being treated for his injury, but it is clear that the plaintiff did receive medical care for his condition and there is no indication that there was any unreasonable delay in providing medical care to the plaintiff which caused damage and/or further injury to him." (Defs.' Mem. Supp. Summ. J. Mot. at 12.)

In *Hill v. Dekalb Regional Youth Detention Center*, the Eleventh Circuit opined that "[a]n inmate who complains that delay in medical treatment rose to a constitutional

violation must place verifying medical evidence in the record to establish the detrimental effect of delay in the medical treatment to succeed." 40 F.3d 1176, 1188 (11th Cir.1994), There, however, the plaintiff attempted to establish that his medical need was sufficiently serious by relying on the effect of the delay in treatment. *Id.* Alternatively, a prisoner can demonstrate a sufficiently serious medical need when the medical condition is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko,* 535 F.3d at 241. When prison officials delay in providing medical treatment for an obvious medical need, the "violation is not premised upon the 'detrimental effect' of the delay, but rather that the delay alone in providing medical care creates a substantial risk of harm." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004).  Under these circumstances, the "[p]laintiff need not present verifying medical evidence to show that, even after receiving the delayed necessary treatment, his medical condition worsened or deteriorated. Instead, it is sufficient to show that he actually experienced the need for medical treatment, and that the need was not addressed for a reasonable time." *Id.* at 900.  Here, the undersigned finds that there is question of fact as to whether the delay in sending the Plaintiff to the E.R. constitutes deliberate indifference to the Plaintiff's serious medical needs.

Second, the undersigned notes that the Plaintiff claims that he was transferred from the LCDC to the SCDC by the Defendants to avoid having to provide surgery for the Plaintiff. (Compl. at 4.) The Defendants have offered nothing in support of denial of this allegation. In fact, in their memorandum, the Defendants do not even address the Plaintiff's transfer and cancellation of the surgery in regard to the Plaintiff's claims of

13

denial of medical care. Therefore, in considering whether summary judgment for the Defendants on this claim is appropriate, the undersigned must assume that the Plaintiff's version of the facts is true. *Gray v. Spillman,* 925 F.2d 90, 95 (4th Cir.1991); *Davis v. Zahradenick*, 600 F.2d 458, 460 (4th Cir.1979).

Here, assuming the truth of Plaintiff's version of the facts, there is at least a genuine issue of fact with respect to whether Plaintiff received proper medical care and treatment following the assault. The undersigned cannot find as a matter of law that a reasonable trier of fact would conclude that the Defendants did not act deliberately indifferent to the Plaintiff's serious medical condition. Further, while some of the non-medical Defendants ultimately may be found not liable, at this time, it is unclear whether these non-medical prison personnel were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Therefore, the Defendants are not entitled to summary judgment on this claim.

**Supervisory Liability**

To the extent that the Plaintiff seeks to impose liability based on respondeat superior, the doctrine does not apply in § 1983 proceedings. *Monell v. Department of Social Services,* 436 U.S. 658, 691 (1978); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Absent an allegation of personal involvement or unconstitutional policy or custom, there is no legal basis to find these defendants liable. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.1994).

Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in

conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Id.* at 799.

The Fourth Circuit has held that, in order to impose supervisory liability under § 1983 for failure to train subordinates, a plaintiff must plead and prove that: (1) the subordinates actually violated the plaintiff's constitutional or statutory rights;(2) the supervisor failed to train properly the subordinates thus illustrating a "deliberate indifference" to the rights of the persons with whom the subordinates come into contact; and (3) the failure to train actually caused the subordinates to violate the plaintiff's rights. *Brown*, 308 F.Supp.2d at 701. Moreover, "[a] section 1983 failure-to-train claim cannot be maintained against a governmental employer in a case where there is no underlying constitutional violation by the employee." *Young v. City of Mt. Ranier*, 238 F.3d 567, 579 (4th Cir. 2001).

In his Complaint, the Plaintiff alleges that the Defendant Sheriff Chastain "failed to train, supervise, and/or control Defendants Major Christopher Hudson, Lt. Vera Nedahausen, Lt. Champagne, Lt. Sullivan, Lt. Westbury, and Sgt. Lowry who failed and/pr refused to protect Plaintiff against unwarranted assault . . . [and] failed to personally protect Plaintiff against known and present unwarranted assault, . . refused to order, cause Plaintiff to be transported to proper medical attention on August 15, 2010

(sic), denied Plaintiff to receive/order doctor prescribed medical reconstructive surgery . . ., causing Plaintiff to suffer permanent/irreversible physical damage." (Compl. at 4.)

Here, not only has the Plaintiff alleged that the Sheriff Chastain was liable under a theory of supervisory liability, the Plaintiff also alleges that Sheriff Chastain is personally responsible for the alleged incidents. Thus, while the Plaintiff cannot show that the Defendant Sherriff Chastain is liable on a theory of respondeat superior or supervisory liability, his allegations also include allegations of personal involvement which preclude granting summary judgment for Sheriff Chastain at this time.

**Qualified Immunity**

The Defendants also seek summary judgment based on qualified immunity. Determining whether an official would be entitled to qualified immunity generally requires a two-step inquiry. *See Pearson v. Callahan*, 555 U.S. 223 (2009). The court must determine whether, taken in the light most favorable to the Plaintiff, the facts alleged show that the official's conduct violated a constitutional right. *Parrish v. Cleveland*, 372 F.3d 294, 301–02 (4th Cir.2004). If the facts, so viewed, do not establish a violation of a constitutional right, the inquiry ends, and the Plaintiff cannot prevail. *Id.* If the facts do establish such a violation, however, the court must determine whether the right violated was clearly established at the time of the alleged offense. *Id.* In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Id.* "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." *Id.* (citations and quotations

omitted). "Fourth Circuit precedent is one source for determining whether the law was clearly established at the time of the alleged violation." *Vathekan v. Prince George's County*, 154 F.3d 173, 179 (4th Cir.1998);  *Jean v. Collins*, 155 F.3d 701, 709 (4th Cir.1998) (en banc)) ("In determining whether a right was clearly established at the time of the claimed violation, 'courts in this circuit [ordinarily] need not look beyond the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose . . . .' "). Because the constitutional rights alleged to have been violated were clearly established, and a "genuine issue of material fact" exists "regarding '[w]hether the conduct allegedly violative of the right[s] actually occurred," *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir.1992)), the Defendants should be denied qualified immunity at the summary judgment stage as to the Plaintiff's medical indifference claims.[3]

## **CONCLUSION**

Based on the foregoing, it is recommended that the Defendants' Motion for Summary Judgment (Dkt. # 39) be GRANTED in part and DENIED in part.  The Plaintiff's failure to protect claims should be dismissed with prejudice.  Further, the LCDC should be dismissed as a Defendant.

IT IS SO RECOMMENDED.

---

[3]Because the undersigned recommends that the failure to protect claims be dismissed on the merits, the undersigned discusses qualified immunity only as to the Plaintiff's denial of medical care claims. *See DiMeglio v. Haines*, 45 F.3d 790, 799 (4th Cir.1995) ("In many cases where a defendant has asserted qualified immunity, dismissal or even an award of summary judgment may be obviously warranted, based upon existing law, without the court ever ruling on the qualified immunity question.").

                                              s/Bruce Howe Hendricks
                                              United States Magistrate Judge

June 14 , 2011
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).